In the

# United States Court of Appeals

## For the Seventh Circuit

No. 01-3048

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

EDWARD BEQUETTE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 00 CR 30178—**Michael J. Reagan**, *Judge.*

ARGUED JUNE 5, 2002—DECIDED OCTOBER 29, 2002

Before FLAUM, *Chief Judge*, and DIANE P. WOOD, and WILLIAMS, *Circuit Judges.*

WILLIAMS, *Circuit Judge.* Edward Bequette appeals his sentence of 151 months' incarceration for manufacturing and conspiring to manufacture and distribute methamphetamine. Because we find that the district court properly relied on the jury's special verdict to determine the relevant drug quantity, we affirm the district court.

## I. BACKGROUND

On August 29, 2000, Drug Enforcement Agency agents, acting on a tip, knocked on the door of Edward Bequette's

residence, identified themselves, and asked if they could conduct a search of his house. When Bequette opened the door, a haze of what appeared to be ammonia vapors escaped from the house. Knowing that such vapors are by-products of methamphetamine production, the agents asked if anyone was manufacturing, or "cooking," methamphetamine in the house. Bequette said no, but that someone else had cooked a batch the night before. He gave the agents permission to search the residence, where they found equipment needed for methamphetamine production, batches of methamphetamine in the early processing stages, by-products of production, sales records, several firearms, and boxes of different kinds of over-the-counter medicines which are used to process methamphetamine.

Bequette was charged with one count of manufacturing less than 50 grams of a substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and one count of conspiring to manufacture and distribute at least 50 grams but less than 500 grams of a substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. At trial, Bequette's son, Austin, testified that he sold methamphetamine "8-balls" (named because they contained one-eighth of an ounce of methamphetamine) manufactured by his father. After a four-day trial, Bequette was found guilty of both counts. In addition, the jury returned a special verdict finding that at least 50 grams of a substance containing methamphetamine was attributable to Bequette regarding the conspiracy. Sentenced to 151 months' imprisonment, supervised release, and a fine, he now appeals his sentence.

## II. ANALYSIS

We review a district court's application of the Sentencing Guidelines de novo, *see United States v. Gio*, 7 F.3d

1279, 1289 (7th Cir. 1993), though we give great deference to a sentencing court's determination of drug quantity, reversing only if we are convinced that a mistake has been made. *See United States v. Corral-Ibarra*, 25 F.3d 430, 437 (7th Cir. 1994).

In drug cases, sentencing courts must make explicit findings as to drug quantity and describe the reasoning, rationale, and supporting evidence behind these findings.[1] *See United States v. McEntire*, 153 F.3d 424, 435 (7th Cir. 1998); *United States v. DePriest*, 6 F.3d 1201, 1213 (7th Cir. 1993). Here, the district court remarked during sentencing, "I need only find by a preponderance of the evidence that [the relevant drug quantity] was at least 50 grams and I do so, but I think the jury verdict is conclusive in this matter beyond a reasonable doubt." The special verdict form indicated that the jury found "beyond a reasonable doubt that the amount of the mixture or substance containing a detectable amount of methamphetamine as charged in Count 2 of the Superseding Indictment was at least 50 grams." As Bequette reminds us, it is the *judge*, not the *jury*, which determines relevant conduct for sentencing purposes, *see Edwards v. United States*, 523 U.S. 511, 513-14 (1998), but it is not improper for a judge to rely on a jury's finding of drug quantity when making relevant conduct findings, given the wide range of evidence which judges may consider when making such findings.

So long as there is a finding by a preponderance of the evidence that the defendant has engaged in relevant con-

---

[1] Bequette notes correctly that a jury finding of drug quantity, as required by *Apprendi v. New Jersey*, 530 U.S. 466 (2000), is not necessary in his case because his 150-month sentence was less than the statutory maximum of 240 months provided for in 18 U.S.C. § 841(b)(1)(C) for an indeterminate amount of substances containing methamphetamine.

duct, district court judges are entitled to consider a wide range of factors when determining an appropriate sentence. *See United States v. Musa*, 946 F.2d 1297, 1306 (7th Cir. 1991); WRIGHT, FEDERAL PRACTICE & PROCEDURE: CRIMINAL 2D § 526 nn.16-21 (1982). Regardless of the type of evidence considered by a judge, our concern is first and foremost that the findings are based on reliable evidence. *See United States v. Brumfield*, 301 F.3d 724, 732 (7th Cir. 2002). Given this concern with reliability, it seems incongruous to suggest that a jury's drug quantity finding, made using only admissible evidence and found beyond a reasonable doubt, is inadequate for sentencing guidelines purposes. This is especially true given the deference we give to juries, disturbing their fact-finding in the civil context (where special verdicts are more common) only if "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party," *Reynolds v. City of Chicago*, 296 F.3d 524, 527 (7th Cir. 2002).

We agree with Bequette that if the district court had not relied on the jury's special verdict, it should have explained why it relied on Austin's trial testimony describing a large quantity of methamphetamine when it determined the relevant drug quantity rather than Austin's sentencing hearing testimony, which professed a smaller quantity of drugs.[2] This is because sentencing courts must state *why* one set of facts is more compelling than another when making their findings, not just identify which version of a story they find most credible. *See United States v. Schaefer*, 291 F.3d 932, 938 (7th Cir. 2002); *United States v. McClanahan*, 136 F.3d 1146, 1151 (7th Cir. 1998).

---

[2] Although Austin gave different estimates of the amount of drugs sold during direct and cross-examination, using the most conservative estimate, Bequette was involved with more than 50 grams of a substance containing methamphetamine.

We need not resolve whether the other testimony relied on by the district court judge, *i.e.*, the trial testimony of Austin and of DEA chemist Angelos, was less reliable than the jury finding. Questions about the reliability of their testimony affect neither the uncontested reliability of the jury's special verdict nor the district court's reliance on that verdict. Since we have no reason to doubt the jury's finding (indeed, Bequette's trial counsel acknowledged during the sentencing hearing that the district court would take it into account), we find no reason to disturb either the jury's special verdict or the district court's reliance on it. Therefore, we do not have a "firm and definite conviction that a mistake has been made," *United States v. Corral-Ibarra*, 25 F.3d at 437, and hold that it was not clear error for the district court to rely on the jury's drug quantity finding when calculating Bequette's base offense level.

Bequette also challenges the Pre-Sentence Report's reliance on the testimony of DEA chemist Angelos, who calculated the total possible methamphetamine that could be manufactured from the cough and cold medicine whose empty boxes were found in Bequette's home. But Bequette acknowledges that only one independent basis is necessary for a relevant conduct finding under the clear error standard, and since we find that reliance on the jury's special verdict is adequate in this case, we need not consider this claim.

## III. CONCLUSION

For the foregoing reasons, we find that the district court did not err when making its drug quantity findings, and we AFFIRM Bequette's sentence.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*